IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                                     No. CR 07-1282 BB

ANDREW CARRILLO CHAPIN,

        Defendant.

**MEMORANDUM OPINION
AND
ORDER DENYING MOTION TO DISMISS
DUE TO DISCOVERY VIOLATIONS
AND DOUBLE JEOPARDY VIOLATION**

        **THIS MATTER** is before the Court on *Defendant's Motion to Dismiss Indictment Due to Government Discovery Violations and Double Jeopardy Violation and for Other Relief* [doc. 108]. The Court having fully considered the briefs of counsel, finds the *Motion* lacks support in both facts and law, and it will be Denied.

*Facts*

        The case against Defendant began with a traffic stop in Santa Clara, New Mexico, on March 13, 2007. During the traffic stop, a search was conducted on the vehicle which led to the discovery of drugs and firearms. The traffic stop was conducted by the Santa Clara Police Department with the assistance of officers from the Grant County Sheriff's Department and the City of Bayard Police Department. Both the driver, Defendant John Farley, and the passenger, Defendant Andrew Chapin, were arrested and made statements at the scene. They

were then transported to the police station in Santa Clara.  At the police station, both Farley and Chapin were interviewed.  Since no one from Santa Clara had a working voice recorder, all recordings were made on a personal digital recorder which belonged to Officer Manuel Maldonado, who was employed by the City of Bayard Police Department at that time.  Santa Clara Police Chief, Paul Jasso, tried to copy the digital recordings onto a cassette which he provided to the DEA.  Assistant United States Attorney Wormuth received a copy of the recordings on cassette and had it duplicated and mailed to defense counsel.

After listening to the cassette shortly before the scheduled October trial, Mr. Wormuth determined the conversations were almost unintelligible and asked Chief Jasso for another copy.  Chief Jasso informed Mr. Wormuth the digital recordings had been deleted from Officer Maldonado's recorder.  At trial, Chief Jasso was questioned about the recordings on cross examination.  That same day, the United States called Officer Maldonado.  Officer Maldonado was also questioned about the recordings on cross-examination.  During the next trial day, Attorney Wormuth received a call indicating Officer Maldonado had located the lost recordings.  When the recorder arrived, it contained not only the original recordings, which had been the subject of the Jasso and Maldonado testimony, but also at least one other recording involving Chapin.

Following the day's trial recess, Assistant United States Attorney Wormuth, Chief Jasso, and Chapin's defense counsel met at the local DEA office to listen to the four recordings.  After listening to the recordings, Defendant's counsel indicated that he intended to move for a mistrial and asked if the United States would object.  Mr. Wormuth indicated that there would be no objection.

As detailed in the Court's recently filed opinion on vindictive prosecution, the motion for mistrial was granted with a finding that it was in no way due to the actions of the Assistant United States Attorney. On December 14, 2007, the Court entered a written Order which was prepared by the parties. (Doc. 88). In the Order, the Court found "[i]n no way were the actions of the prosecuting attorneys designed to goad Defendant into requesting a mistrial." *Id.*

## *Discussion*

### I.   *Discovery Abuses*

Defendant has demonstrated little beyond potential negligence by underfunded rural police officers to support his claims of discovery abuses. Grant County Officers had the recordings reproduced, though they were truncated and largely unintelligible. To prevail, Defendant must show that Officer Maldonado and/or Chief Jasso initially knew of and intentionally secreted the full recordings, concluded that trial was going poorly, and therefore produced the recordings during the trial to sabotage the proceeding.

Because FEDERAL RULE OF EVIDENCE 615 had been invoked, neither Chief Jasso nor Officer Maldonado were present in the courtroom during any other testimony. Nor were they present when Mr. Farley, the co-Defendant, testified for three hours giving extensive details of both his own and Mr. Chapin's extensive drug dealing over a two year period. Mr. Farley identified Mr. Chapin's cell phone picture holding a loaded gun and then traced the history of that gun with regard to Defendants' narcotics dealings. If they had heard of such testimony, it seems highly unlikely either Jasso or Maldonado would have concluded it was necessary to force a mistrial. In any event, if Chief Jasso and Officer Maldonado were nefarious and

**sophisticated enough to have secreted these recordings until trial, the most predictable remedy was a continuance, not a mistrial.** *United States v. Maples*, **60 F.3d 244 (6th Cir. 1995);** *United States v. Kaplan*, **554 F.2d 577 (3d Cir. 1975).**

**Even if Defendant could show Officer Maldonado and Chief Jasso had intentionally withheld the recordings and that they contained** *Brady*[1] **or** *Giglio*[2] **material, the remedy at this point would not be dismissal of the indictment. When the Government totally refuses to produce material known to be exculpatory as ordered by the court, dismissal of the indictment may be the proper remedy.** *Jencks v. United States*, **353 U.S. 657 (1957);** *United States v. Diabate*, **90 F. Supp. 2d 140 (D. Mass. 2000). This is, however, an extreme sanction reserved for only most egregious and wilful violations.** *United States v. Dennison*, **891 F.2d 255 (10th Cir. 1989);** *United States v. Hastings*, **126 F.3d 310 (4th Cir. 1997). Indeed, in both** *Brady* **and** *Giglio* **the remedy was not the dismissal of all charges but rather a new trial where the new evidence could be considered. Here, it is not even clear there was any discovery abuse, but it is clear if there was such a violation it was merely technical and not meriting dismissal. Such "discovery abuses" could be cured by a retrial – the exact opportunity with which Defendant is presented.** *United States v. Davis*, **578 F.2d 277, 278-79 (10th Cir. 1978);** *United States v. Lewis*, **368 F.3d 1102, 1107 (9th Cir. 2004);** *United States v. Coleman*, **862 F.2d 455, 458 (3d Cir. 1988).**

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

[2] *Giglio v. United States*, 405 U.S. 150 (1972).

## II.     *Double Jeopardy*

The Double Jeopardy Clause protects a criminal defendant from repeated prosecutions for the same offense. *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982). Therefore, the general rule is that the Double Jeopardy Clause does not bar retrial where a defendant moves successfully for a mistrial. *United States v. Gonzalez*, 248 F.3d 1201, 1202 (10th Cir. 2001). "A narrow exception exists where 'the conduct giving rise to the successful motion for a mistrial was *intended to provoke the defendant into moving for a mistrial*.'" *Id.* at 1203 (emphasis in original) (quoting *Oregon*, 456 U.S. at 679). Such exception occurs where the mistrial is caused by prosecutorial misconduct which is intended to provoke the defendant into moving for a mistrial. *Id.* Prosecutorial misconduct which is merely harassing or overreaching, although sufficient to justify a mistrial, will not bar a retrial absent such intent." *United States v. Poe*, 713 F.2d 579, 583 (10th Cir. 1983). In other words, the Double Jeopardy Clause only "prevents prosecutors from sinking a case they knew was doomed to end in an acquittal in the hope of having better luck before a second jury." *Lewis*, 368 F.3d at 1108.

Defendant has conceded and this Court has found that the prosecution had no such intent in this case. Consequently, the instant case does not fall within the narrow exception of *Oregon*. Defendant, however, attempts to sidestep this fact by claiming that the officers who disclosed the original recordings during trial did so with the intent to goad Defendant into requesting a mistrial. Def.'s Mot. Dism. at 2.

Defendant's argument initially fails because the narrow *Oregon* exception does not appear to apply to governmental agents, only prosecutors themselves. *See United States v. Leonard*, 593 F.2d 951, 954 (10th Cir. 1979) ("There is an exception that applies where the

5

**prosecutor or court acts for the purpose of bringing forth from defendants a mistrial motion.")** (emphasis added); *see also United States v. Strickland*, 245 F.3d 368, 374 (4th Cir. 2001). **Moreover, even if the actions of police or others aligned with the prosecution could be attributed to the prosecutor, they have to be abuses calculated to "goad" a defendant into seeking a mistrial. Discovery failures of the nature involved here clearly do not satisfy this criteria.** *Tinsley v. Million*, **399 F.3d 796, 801, 812 (6th Cir. 2005);** *United States v. McKoy*, **78 F.3d 446, 449 (9th Cir. 1996);** *Virginia v. Kelly*, **29 F.3d 145, 147 (4th Cir. 1994);** *United States v. Millan*, **17 F.3d 14, 18 (2d Cir. 1993).**

## O R D E R

For the above stated reasons, *Defendant's Motion to Dismiss Indictment Due to Government Discovery Violations and Double Jeopardy Violation and for Other Relief* is DENIED.

SO ORDERED this 5th day of March, 2008.

                                                  BRUCE D. BLACK
                                                  United States District Judge